# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:   1:18-CV-

JOHNATHAN HERNANDEZ                )
                                   )
    Plaintiff,                    )
                                   )
v.                                 )
                                   )
ALLSTATE FIRE AND CASUALTY         )
INSURANCE COMPANY,                 )
                                   )
    Defendant.                    )
                                   )

## CIVIL COMPLAINT AND JURY DEMAND

The Plaintiff, Johnathan Hernandez, by and through his undersigned attorneys, ZANER HARDEN LAW, LLP, hereby submits the following Civil Complaint and Jury Demand and asserts:

### JURISDICTION AND VENUE

1. At all times relevant to this action, Plaintiff Johnathan Hernandez (hereinafter, "Plaintiff") resided in Colorado.

2. Upon information and belief, at all times relevant to this action, Defendant Allstate Fire Casualty Insurance Company (hereinafter "Defendant") was and is an Illinois corporation authorized to do business in the State of Colorado.

3. At all relevant times, Defendant purposefully availed itself of the privilege of conducting business in the State of Colorado.

4. Defendant maintains a registered agent for service in Denver, Colorado at the Division of Insurance, 1560 Broadway, Ste. 850, Denver, Colorado 80202.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is a civil action in which the parties are citizens of different states.

6. Venue is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) as this is a District with a substantial part of the events or omissions giving rise to Plaintiff's claims.

## FACTUAL ALLEGATIONS

7. On or about July 3, 2015, Plaintiff and Lamont Gibson (hereinafter, "Gibson") were involved in a pedestrian and motor vehicle collision at or near 1150 S. Chambers Rd., Denver, Colorado 80227.

8. On or about July 3, 2015, Plaintiff was directing cars into a car wash at 1150 S. Chambers Rd.

9. On or about July 3, 2015, Gibson was driving a 2000 Cadillac Deville.

10. After waiting at the car wash at 1150 S. Chambers Rd., Gibson decided to leave the line of cars waiting to enter the car wash.

11. As Gibson attempted to leave the line of cars waiting to enter the car wash, he struck Plaintiff with his vehicle ("the incident").

12. Gibson failed to maintain a proper lookout when he directed the Cadillac into Plaintiff.

13. Plaintiff suffered physical injuries, including a right knee injury, as a result of the aforementioned collision and underwent medical treatment, including surgery.

14. Plaintiff was not comparatively negligent at the time of the collision.

15. Plaintiff did not cause the aforementioned collision.

16. As a direct and proximate result of Gibson's negligence, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to, past and future medical expenses and other economic losses.

17. As a direct and proximate result of Gibson's negligence, Plaintiff suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress, and impairment of quality of life.

18. As a direct and proximate result of Gibson's negligence, Plaintiff has suffered physical impairment.

19. At the time of the incident, Gibson was insured by Legacy Insurance Services, Inc. d/b/a Arizona Automobile Insurance Company with an automobile liability policy totaling $25,000.

20. Arizona Automobile Insurance Company tendered the $25,000 in total coverage, and on March 3, 2017, Defendant provided consent for Plaintiff to accept Arizona Automobile Insurance Company's settlement offer.  Plaintiff then proceeded to accept this settlement offer to resolve his claims against Gibson.

21. On May 9, 2017, Plaintiff received the $25,000 check from Arizona Automobile Insurance Company.

22. On February 27, 2017, Dan Rosen, Esq. sent a letter to Defendant on behalf of Plaintiff with a demand package demonstrating claim-related medical bills totaling $31,485.72.

23. In a letter dated May 1, 2017, Defendant confirmed an offer of $6,000 to resolve Plaintiff's underinsured motorist claim. This $6,000 offer equated to a $31,000 claim valuation.

24. In a letter dated April 26, 2017, Mr. Rosen responded to Defendant's $6,000 offer stating, "I am quite surprised how low your offer is based on the injuries sustained." Mr. Rosen proceeded to point out medical expenses of $31,485.72 and wage loss of at least another $3,599.10 to support his claim that Plaintiff was clearly entitled to more than $6,000 pursuant to the underinsured motorist policy with Defendant.

25. In a letter dated May 26, 2017, Defendant's adjuster, Deborah Benjamin, responded to Mr. Rosen's April 26, 2017 letter stating, "I appreciate that you have mentioned that his total medical expenses were billed at $31,485.72, however, in my evaluation I have considered amounts that reflect reasonable charges for the services provided. Please note that the worker's compensation final admission of liability reflects $9,837.87 in medicals and $2,392.87 in lost wages (which admittedly is at 60%)." Ms. Benjamin increased Plaintiff's offer to $9,000.

26. Ms. Benjamin goes on to note in the May 27, 2017 letter, "I have considered all of his treatment, it is the billing that is in dispute."

27. Ms. Benjamin's statement in par. 26 means that Defendant agreed that Plaintiff's treatment was reasonable and related to the underlying incident with Gibson.

28. In Ms. Benjamin's April 26, 2017 letter, Ms. Benjamin ascertained "amounts that reflect[ed] reasonable charges for the services rendered" for Plaintiff's medical treatment by utilizing worker's compensation's "paid amounts" rather than the bare medical charges of $31,485.72.

29. Ms. Benjamin fails to state what these "reasonable charges" are.

30. Evidence of paid amounts from collateral sources such as worker's compensation are not admissible at trial. *See e.g.* C.R.S. 10-1-135; *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649 (Colo. 2012).

31. Similarly, attempting to use "paid amounts" to ascertain "reasonable charges" for medical bills, a strategy clearly employed by Ms. Benjamin in valuing Plaintiff's underinsured motorist claim, is clearly barred by Colorado law. *See e.g. Wal-Mart Stores v. Crossgrove*, 276 P.3d 562, 565 (Colo. 2012).

32. It is Defendant's business practice to regularly analyze a claimant's medical bills to ascertain if the bills are "reasonable."

3

33. In addition to merely looking at the "paid amounts" on explanation of benefit ledgers, a practice Ms. Benjamin clearly utilized as described in her letter above, Defendant's adjusters regularly also use proprietary software to ascertain whether a claimant's medical bill(s) are reasonable.

34. Upon information and belief, Ms. Benjamin employed this software to, at least in part, determine the "reasonable" value of Plaintiff's medical bills.

35. Defendant's proprietary software, as described in par. 33, fails to have a reasonably scientific method to evaluate if medical bills are or are not "reasonable."

36. Defendant rarely, if ever, finds that a claimant's medical bills in an underinsured/uninsured motorist claim valuation are "reasonable" in total.

37. Defendant rarely, if ever, finds that a claimant's medical bill charges in an underinsured/uninsured motorist claim valuation are "unreasonable" because they are lower than the "norm," as determined by Defendant's proprietary software.

38. Defendant rarely, if ever, values medical bill charges to a degree greater than their face value in an underinsured/uninsured motorist claim valuation where the medical bill charges are lower than the "norm," as determined by Defendant's proprietary software.

39. Defendant almost always or always finds the "reasonable value" of medical bill charges to be lower than what medical providers charged for a particular procedure or CPT code.

40. Defendant is aware that for most underinsured/uninsured motorist claimants such as Plaintiff, their medical bills either were or will be paid by health insurance.

41. Defendant is aware that for those claimants such as Plaintiff who use medical insurance to pay for their medical treatment, those claimants will accept less money to settle their underinsured/uninsured motorist claims with Defendant because those claimants have less medical expenses to pay out of pocket.

42. Defendant regularly hides its valuation of "reasonable value" for a claimant's medical bills, such as Plaintiff's medical bills, behind a proprietary software firewall so that a claimant, like the Plaintiff, cannot reasonably evaluate the reasonableness of Defendant's reasonable value analysis.

43. This shadowy practice gives claimants, such as Plaintiff, the false impression that Defendant is acting fairly when it reduces medical bills based on claimed unreasonable value.

44. Due to Defendant's knowledge of par. 32 through 43, Defendant materially and regularly arbitrarily decreases its valuation of underinsured/uninsured motorist claimants claims.

45. Upon information and belief, Defendant has performed statistical analysis of bad faith judgments related to its medical bill reduction practices in the underinsured/uninsured

motorist context and has determined that it generates more in profits from claimants simply accepting the lower, unreasonable offer than it pays out in penalties either via common law bad faith or via C.R.S. § 10-3-1115 and C.R.S. § 10-3-1116.

46. Defendant is aware that claimants, such as Plaintiff, will be likely to accept lower, unreasonable offers because of, *inter alia*, knowledge asymmetry in claim evaluation between the insured and insurer such as knowledge of collateral source benefits, claimants' faith that Defendant places its insured "in good hands," various social factors such as an uninsured/underinsured claimant's motive to quickly resolve a claim, the expense of a claimant hiring a lawyer to litigate the claim, and fear of Defendant retributively raising a claimant's insurance rates.

47. Upon information and belief, Defendant makes substantial profit from materially and arbitrarily reducing claimants', such as Plaintiff's, medical bill valuation in underinsured/uninsured claim valuation.

48. Ms. Benjamin's claim adjustment of Plaintiff's underinsured motorist claim is in furtherance of Defendant's goal of paying out lower than reasonable value on underinsured/uninsured motorist claims in order to increase corporate profits at the expense of its insured, such as Plaintiff.

49. Defendant has unreasonably and in bad faith failed to offer an adequate and sufficient amount to settle Plaintiff's claim for UM Benefits under the Policy.

50. Defendant has failed to fairly evaluate or pay Plaintiff's claim for UM Benefits under the Policy.

51. Defendant acted unreasonably and with knowledge of, or reckless disregard for, its unreasonableness.

## FIRST CLAIM FOR RELIEF
**Uninsured Motorist Benefits**

52. Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 51 of this Complaint, as if set forth *verbatim*.

53. At the time of the aforementioned collision, Plaintiff qualified as an "insured" for purposes of a contract of insurance, the Policy, with Defendant.

54. The Policy included a provision for uninsured motorist bodily injury coverage, which provides that Defendant will pay for damages and bodily injuries sustained by Plaintiff if injured by a negligent underinsured driver.

55. Gibson was a negligent underinsured driver for purposes of UM Benefits owed to Plaintiff under the terms of the applicable policy.

56. Plaintiff has satisfied all conditions precedent under the Policy and he is eligible to recover UM Benefits under the Policy.

57. Defendant is liable for Plaintiff's injuries and damages, as described above, caused by the underinsured driver in accordance with the provisions of C.R.S. § 10-4-609.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

58. Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 57 of this Complaint, as if set forth *verbatim*.

59. The Policy was in full force and effect on the date and time that Plaintiff suffered injuries in the aforementioned collision.

60. Defendant unreasonably failed to pay the Plaintiff's claims that were made pursuant to the applicable Policy.

61. Defendant breached its contractual duty owed to Plaintiff.

62. Plaintiff is entitled to damages allowed by law for breach of contract against Defendant.

## THIRD CLAIM FOR RELIEF
### Unreasonable Delay/Denial of a Claim for Benefits
### Pursuant to C.R.S. §§ 10-3-1115-1116

63. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth *verbatim*.

64. Defendant's delay and failure to settle Plaintiff's claims for benefits pursuant to the UM coverage under the Policy was and is unreasonable and in violation of C.R.S. §§ 10-3-1115 & 10-3-1116.

65. Pursuant to 10-3-1116, C.R.S., Plaintiff is entitled to recover the covered benefit plus twice the covered benefit as well as attorney fees and costs from Defendant for the unreasonable delay and denial of his claim for uninsured motorist benefits.

## FOURTH CLAIM FOR RELIEF
### Bad Faith

66. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 65 of this Complaint as if set forth *verbatim*.

67. Defendant owed Plaintiff a duty of good faith and fair dealing.

68. Defendant's actions as set forth above were unreasonable and Defendant knew its actions were unreasonable and/or recklessly disregarded the fact that its actions were unreasonable.

69. Defendant breached its duty of good faith and fair dealing and its covenant to act in good faith with regard to Plaintiff.

70. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer economic and non-economic damages as described above.

## **JURY REQUEST**

Plaintiff demands a jury on all issues so triable.

**WHEREFORE,** the Plaintiff, Johnathan Hernandez, prays for judgment against the Defendant, Allstate Fire and Casualty Insurance Company, in an amount to be determined by the trier of fact for his losses as set forth above and for costs, expert witness fees, filing fees, pre- and post-judgment interest, and such other further relief as the Court may deem appropriate, just and proper.

Dated this 20th day of February, 2018.

Respectfully submitted,

ZANER HARDEN LAW, LLP

*/S/Joseph Woelkers*
Joseph Woelkers

Plaintiff's Address:
2230 S. Sable Blvd.
Aurora, CO 80014